Matter of Denenberg (2020 NY Slip Op 08001)





Matter of Denenberg


2020 NY Slip Op 08001


Decided on December 29, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 29, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick,J.P.,
Judith J. Gische
Ellen Gesmer
Peter H. Moulton
Manuel J. Mendez, JJ.


Motion No. 2020-02997 Case No. 2019-00052 

[*1]In the Matter of Seth E. Denenberg, (Admitted as Seth Evan Denenberg) an Attorney and Counselor-at Law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Seth E. Denenberg, an Attorney (OCA Atty Reg. No. 1920859.), Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the Second Judicial Department on April 25, 1984.




Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York (Sean A. Brandveen, of counsel), for petitioner.
Mark A. Longo, Esq., for respondent.



Per Curiam 


Respondent Seth E. Denenberg was admitted to the practice of law in the State of New York by the Second Judicial Department on April 25, 1984, under the name of Seth Evan Denenberg. At all times relevant to this proceeding he maintained an office for the practice of law within the First Judicial Department.
In 2019, the Attorney Grievance Committee (the Committee) served respondent with a notice of petition of charges for violations of rules 3.3(f)(2) and 8.4(h) of the Rules of Professional Conduct (22 NYCRR 1200.0). The petition alleges that respondent made offensive remarks to and about three attorneys from Brooklyn Legal Services that were his adversaries in landlord-tenant matters. Respondent admitted some of the factual allegations but denied all the charges. Respondent's law practice largely consisted of representing clients in landlord-tenant court; he was an active practitioner in Brooklyn's Housing Court and frequently litigated matters against tenants represented by attorneys from Brooklyn Legal Services.
Charge one alleges that respondent violated rule 3.3(f)(2) by engaging in undignified or discourteous conduct while appearing before a tribunal by using gender pejorative language, specifically, on January 13, 2017 respondent repeatedly referred to opposing counsel as a "bitch" in front of her clients and other witnesses in the hallway
adjoining a courtroom at the Brooklyn Housing Court. Charge two relies on the same
facts as charge one and states that respondent violated rule 8.4(h) by engaging in conduct that adversely reflects on his fitness as a lawyer.
This Court appointed a Referee to conduct a hearing on the charges and to recommend disciplinary sanctions, if appropriate. The Referee held a hearing on November 19 and 20, 2019 at which the Committee called six witnesses and introduced documentary evidence. Respondent called seven witnesses - including himself - and submitted four character letters.
The complainant testified that on January 13, 2017, she was at Brooklyn Housing Court representing tenants in a case in which respondent represented the landlord. She was in a packed hallway of the courthouse speaking with her clients and was not ready to have her case called because she needed to consult with her supervisor. Respondent, the complainant's adversary, insisted that he was going to have the case called. The complainant stated she sternly told respondent not to do it, and he said something to the effect of "Well excuse me, Ms. Boss-ma'am" and "You don't have to be a bitch about it." The complainant testified she was shocked and appalled by the use of those terms and asked respondent to repeat what was said, and he repeated "I said you are a bitch," and then called her a "bitch" loudly a few more times in front of the complainant's clients and colleagues. The complainant estimated that respondent called [*2]her a "bitch" five times. She testified that she pointed a finger at respondent but did not touch him. The Committee's witnesses confirmed her version of events, including that respondent repeated the word "bitch" when the complainant asked him what he had called her.
The complainant stated that respondent never apologized to her and that "I felt like the comments were racist like the comments were sexist, and I feel like if I was a white man, no matter what my years of experience in this practice, he would not have said that. And so, I think that my position as a young black woman enabled him to — made him feel comfortable talking down to me and in treating me like I am not too — a licensed attorney practicing in this state."
In addition, she testified that there was one occasion when she witnessed respondent refer to "her former supervisor as "Che" or "Che Guevara" outside of his presence, which shocked her.
Respondent attempted to justify his actions. He stated that he only used the word "bitch" once, which is contradicted by the testimony of the witnesses who observed the incident. He implied that his behavior was warranted because the complainant became physically aggressive and poked him on the forehead with her finger about three or four times. None of the witnesses, including all six of respondent's witnesses, observed the complainant poking or making any physical contact with respondent. He had also initially stated that the complainant slapped him, but subsequently admitted that she did not, and withdrew the allegation.
In a preliminary report, the Referee advised the parties that he intended to sustain charges one and two. The parties waived a sanction hearing and instead submitted memoranda in which the Committee argued for a suspension of no less than three months and that respondent be directed to participate in counseling for a period of up to one year, as determined and monitored by the New York City Bar Association's Lawyer Assistance program (LAP), provided that such counseling include training on diversity, inclusion, and elimination of bias beyond that mandated by New York CLE requirements. Respondent urged a private censure or letter of caution.
By a subsequent report, the Referee sustained charges one and two. The Referee credited the complainant's testimony and those of the Committee's witnesses that observed the entire confrontation - beginning, middle and end - and heard respondent use gender pejorative language in front of the complainant's clients and others present in the Brooklyn Housing Court. The Referee found "that Respondent, without justification or provocation, not only accused [complainant] of 'acting like a bitch' but repeated 'bitch' multiple times when confronted by her. Multiple witnesses testified that the word 'bitch' was said several times. The Respondent compounded this unacceptable behavior by subsequently claiming to [complainant's] supervisor that she hit and poked at him. He repeated [*3]this claim at his deposition before the Attorney Grievance Committee before ultimately withdrawing this allegation. At the hearing he attempted to differentiate between 'hitting' and 'poking' to justify his earlier statement."
The Referee noted that an Admonition was issued to respondent for similar misconduct (discourteous behavior directed at a litigant in a landlord and tenant matter) committed on October 22, 2015, but that he otherwise had an unblemished record after being admitted for 36 years. The Referee determined that respondent's claim, that the "atmosphere" at the Brooklyn Housing Court caused his behavior, did not excuse or justify his use of gender pejorative language to opposing counsel and should not be accorded great weight.
The Referee recommended the sanction of a public censure and that respondent be directed to participate in a counseling program under the auspices of the New York City Bar Association's Lawyer Assistance Program (LAP) to include training in diversity, inclusion, and elimination of bias in addition to the New York State Continuing Legal Education (CLE) requirements.
The Committee now moves for an order under the Rules of the Appellate Division First Department and the Rules for Attorney Disciplinary Matters (22 NYCRR) § 603.8(t)(4) and §1240.8(b)(2), confirming the Referee's liability findings in full. The Committee seeks to have this Court impose a sanction no less than a public censure, directing respondent to participate in counseling for a period of up to one year, provided that such counseling must include some training on diversity, inclusion, and elimination of bias, which is to be in addition to that mandated by New York State CLE requirements, or, in the alternative, imposing such sanctions as this Court deems appropriate. Respondent seeks to have this Court issue a letter of caution, amounting to an Admonition or a Letter of Advisement, and directing him to attend the New York City Bar Association's LAP, alternatively, if this Court adopts the Referee's recommendation of a public censure, that it be "privately delivered."
On this record the letter of caution sought by respondent, with counseling under the auspices of the New York City Bar Association's LAP, is not a proper sanction. This Court has previously imposed a sanction of public censure, as recommended by the Referee, for similar behavior where the respondent has demonstrated genuine remorse, has directly apologized to the complainant and has no prior disciplinary history (Matter of Delio, 290 AD2d 61 [1st Dept 2001], Matter of Schiff, 190 AD2d 293 [1st Dept 1993]). None of those factors are present here.
In this matter, respondent repeatedly denied the scope of his wrongdoing and attempted to justify his actions. His claim that he only stated the complainant "acted like a bitch", instead of calling her one, is mere semantics. His claim that the use of the gender pejorative language was the result of the "atmosphere" in the [*4]Brooklyn Housing Court neither justifies nor excuses his actions. Respondent initially misrepresented to the Committee and the Referee that the complainant slapped or poked him, implying that her actions somehow justified his use of pejorative language.
Respondent never apologized directly to the complainant. His generalized public apology made at a May 2017 meeting of the Brooklyn Landlord and Tenant Bar -where a list compiled by female attorneys from Brooklyn Legal Services was circulated, containing sixty (60) specific references of inappropriate behavior by male attorneys, and which did not include the name of the complainant- is not an apology and is not proof of genuine remorse. Furthermore, the complainant's supervisor testified that respondent made an insincere apology to him immediately after the incident, which is further evidence of a lack of genuine remorse. Finally, respondent received an Admonition for prior similar behavior.
Respondent's misconduct, his failure to apologize and his lack of remorse is similar to the behavior of respondents in matters where this Court has imposed a short suspension and a direction to engage in counseling as a sanction, (see Matter of Bailey, 171 AD3d 184 [1st Dept 2019]; Matter of Giorgini, 166 AD3d 43 [1st Dept 2018], lv dismissed 32 NY3d 1134 [2019]; Matter of Teague 131 AD3d 268 [1st Dept 2015], appeal dismissed 26 NY3d 959 [2015], lv denied 26 NY3d 912 [2015]). Given respondent's behavior, his failure to take full responsibility for his conduct, and his prior disciplinary history, we find that a three-month suspension and referral to the New York City Bar Association's LAP for one year of counseling - which must include training in anger management and on diversity, inclusion, and elimination of bias in addition to the New York State CLE requirements- is the appropriate sanction in this case.
Accordingly, the Committee's motion should be granted to the extent of confirming the Referee's finding of facts and conclusions of law, the sanction recommendation is disaffirmed, respondent is suspended from the practice of law for a period of three months, and until further order of this Court, and respondent is directed to engage in counseling for a period of one year, as determined and monitored by the New York City Bar Association's Lawyer Assistance Program, which must include training in anger management and on diversity, inclusion, and elimination of bias, in addition to that mandated by New York State CLE requirements.
All concur.
It is Ordered that the Committee's motion is granted to the extent of confirming the referee's findings of fact and conclusions of law. The sanction recommendation is disaffirmed, and respondent is suspended from the practice of law in the State of New York for a period of three months, effective January 29, 2021, and until further order of this Court. Respondent is directed to engage in counseling for a period of one year, as determined and monitored [*5]by the New York City Bar Association's Lawyer Assistance Program, which must include training in anger management and on diversity, inclusion, and elimination of bias, in addition to that mandated by the New York State CLE requirements, and
It is further Ordered that for the period of the suspension, respondent is commanded to desist and refrain from the practice of law in any form, either as principal or agent, clerk or employee of another; that respondent is forbidden to appear as an attorney or counselor-at-law before any court, judge, justice, board or commission or other public authority; that respondent is forbidden to give another an opinion as to the law or its application or advice in relation thereto; and
It is further Ordered that during the period of his suspension respondent is directed to fully comply with the provisions of the Court's rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), which is made a part hereof.
Entered: [December 29, 2020]